JOSIAH W. PROVART *et al.*

*v.*

EMILY HARRIS *et al.*

*Filed at Mt. Vernon April 2, 1894.*

1. DEED—*delivery essential.* Delivery is indispensable to the validity and operation of a deed. That is the final act on the part of the grantor by which he consummates the purpose of his conveyance, and without it all other formalities which have preceded are impotent to render it effectual as an instrument of title.

2. SAME—*delivery—how made.* The law prescribes no formulary to be pursued in making delivery of a deed, and it may be done "by acts without words, or by words without acts, or by both." It may be "either actual, by doing something and saying nothing, or else verbal, by saying something and doing nothing, or it may be by both; but it must be made by one or both these ways, for otherwise, though it be never so well sealed and written, it will be. of no force."

3. SAME—*delivery without actual possession of grantee.* While it may not be essential, in all cases, that the deed shall be delivered into the actual possession of the grantee, it is indispensable that the deed shall pass beyond the dominion and control of the grantor. Until the grantor parts with all control over his deed, that of his grantee does not attach. If the grantor retains control over his deed, it will be ineffectual, for any purpose, as a conveyance.

4. It is absolutely essential that the acts done or words spoken, or both, shall clearly manifest an intention on the part of the grantor that the deed shall presently become operative to convey the estate therein described, to the grantee, and that he has parted with all dominion and control over it.

5. So long as a deed is in the hands of a depositary, subject to be recalled by the grantor at any time, the grantee has no right to it, and can acquire none; and if the grantor dies without parting with the control over the deed, it has not been delivered during his life, and after his decease no one can have the power to deliver it.

6. A party, in his last illness, being desirous of disposing of his property, had a scrivener called in, whom he directed to draw five deeds to five of his sons, and his will. After the making of the deeds the scrivener commenced to write the will, but the grantor being too weary to proceed, he requested the scrivener to call the next morning. The scrivener, as he was leaving, asked the grantor if he should take with him the deeds, who said, "No, let them stay where they are." He said to his pastor, on the day the deeds were drawn, that he wanted to make the deeds for his boys, and that if he did not get better he wanted the pastor to take the deeds and have them recorded. The grantor died before the next morning, leaving the deeds on the table where they were placed by the draftsman: *Held,* that there was no delivery of the deeds to the grantees therein named.

7. PRACTICE IN THE SUPREME COURT—*cross-errors.* Where a defendant in error, or an appellee, does not assign cross-errors, he can not question the correctness of the ruling of the trial court in allowing the appellant to testify in a chancery case.

8. SAME—*when competency of evidence becomes immaterial.* This court will not determine the competency of evidence which was not considered by the chancellor, when it can not change the result if treated as proper evidence.

APPEAL from the Circuit Court of Perry county; the Hon. B. R. BURROUGHS, Judge, presiding.

This was a bill in chancery, in the circuit court of Perry county, brought by appellees, as heirs-at-law of Philip C. C. Provart deceased, against the widow and other co-heirs-at-law, and their respective husbands and wives, to set aside and have annulled certain deeds purporting to convey to five of his sons, in severalty, certain lands in said deeds described, to have said lands declared a part of decedent's estate, the dower and homestead of the widow therein set off and assigned, and the lands partitioned among the heirs, etc. Answers were filed by the guardians *ad litem* of the minor defendants, neither admitting nor denying the allegations of the bill, but setting up the interests of the minors, and invoking the protection of the court in that behalf, etc. The adult defendants, appellants Josiah W., Zepheniah R., Hosea P., Azariah and Edgar Provart, the said five sons, filed their joint and several answers, setting up claim to said lands under and by virtue of said deeds. The other defendants did not answer, and were defaulted. Hearing was had on bill, answer, cross-bill of minors, replication and proofs, and a decree entered in accordance with the prayer of the original bill, from which decree appellants prosecute this appeal.

On July 3, 1890, Philip C. C. Provart, *causa mortis*, undertook the disposition of his estate among his heirs, etc. At his instance a justice of the peace, John Harris, was called in, who drew five deeds, one to each of said five sons, appellants, which deeds were duly signed and acknowledged by the said Provart and wife. The justice was then further requested to proceed with the drafting of a will, which was at once entered upon, the commencement written, but said Provart becoming exhausted, deferred the matter until the next morning, and requested the justice to then call and complete it. Before leaving, the said justice asked him if he desired that he (the

justice) should take the deeds, which had been laid on a table in the adjoining room, along with him and retain them till morning, to which Provart replied, "No, leave them where they are; they have been cared for." The justice immediately departed, and in less than an hour thereafter Provart died. Provart had asked Rev. Josiah Harris, who was present, that if he (Provart) did not get along, or well, to take the deeds and have them recorded. The Rev. Harris, on July 4, after Provart's death, took the deeds and delivered them to two of the sons not grantees therein, who on the same day delivered to each of the grantees therein his deed, respectively. No further act toward the disposition of his estate was done by said Provart.

On the hearing, appellants, over objection of complainants in the bill, were permitted to testify in their own behalf, and it is assigned for error that the court refused to consider this testimony in the rendition of its decree. No cross-errors are assigned.

By the decree entered December 16, 1890, the court found as to said several deeds to appellants, that "no actual delivery of the same was made, neither to the said several grantees nor to any person in their behalf, but that on the next day, after the decease of the said Provart, the same were, by the hand of one Josiah Harris, delivered to strangers to the transaction, members of the family of the said Philip C. C. Provart, and were finally permitted to come into the hands of the said grantees, who caused the same to be filed and entered of record as aforesaid, and that there was no actual or constructive delivery of the said deeds, or either of them, by the said Provart, in his lifetime, to the said grantees, or to either of them, nor to any person in their, or either of their, behalf;" decreed each of said deeds null and void, and set the same aside; finds advancements made, in decedent's lifetime, to certain of his children, and decrees that such children bring the amounts thereof, respectively, into hotchpot, etc., or be

barred, etc.; decrees assignment of dower and homestead to the widow, and then partition of the estate according to the respective interests, as prayed in the bill, etc.

Messrs. F. M. & D. V. YOUNGBLOOD, for the appellants:

The rule of law is universal, that where a well executed deed is found in the possession of the grantee, it is presumed to have been delivered and accepted, and parties attacking the validity of such a deed must overcome this presumption by evidence that shows there was no delivery or acceptance. *Hulick* v. *Scovil*, 4 Gilm. 159; *Bryan* v. *Wash*, 2 id. 564; *Ferguson* v. *Miles*, 3 id. 363; *Wiggins* v. *Lusk*, 12 Ill. 132; *Himes* v. *Keighblingher*, 14 id. 471; *Warren* v. *Jacksonville*, 15 id. 236; *Masterson* v. *Cheek*, 23 id. 72.

The facts in the case at bar show that these conveyances were made as voluntary settlements by the grantor upon the grantees; hence the law makes stronger presumptions in favor of the delivery of the deeds than in ordinary cases of bargain and sale. *Bryan* v. *Wash, supra; Masterson* v. *Cheek, supra.*

In cases of voluntary settlement by a father upon the son, the decisions are uniform that the possession of the deed by the grantor until his death did not invalidate or defeat it. *Reed* v. *Douthit*, 62 Ill. 348, and cases there cited.

Where a grantor places the deed in the hands of a stranger, for the grantee, and no restrictions are imposed upon its delivery, such an act is sufficient to give the deed full effect. *Rawson* v. *Fox*, 65 Ill. 200.

Even if the deeds had been lost while in the hands of Josiah Harris, the title would have vested in the grantees. *Hinrichsen* v. *Hodgen*, 67 Ill. 179; *Byars* v. *Spencer*, 101 id. 429.

No particular form is necessary to constitute a delivery of a deed. The very essence of the delivery is the intention of the party. *Gunnell* v. *Cockerill*, 79 Ill. 79; 84 id. 319.

On the question of delivery see, also, *Shackelton* v. *Sebree*, 86 Ill. 616; *Grand Tower Mining Co.* v. *Cady*, 96 id. 430;

*Otis* v. *Spencer,* 102 id. 622; *Weber* v. *Christen,* 121 id. 91; *Cline* v. *Jones,* 111 id. 563; *Young* v. *Young,* 113 id. 430; *Hill* v. *Hill,* 119 id. 242; *Roane* v. *Baker,* 120 id. 308.

Mr. W. K. MURPHY, and Mr. THOMAS J. LAYMAN, for the appellees:

We insist that there was no delivery of any of said deeds, or any acceptance of any of them. The rule of law is well settled, that to render a deed valid there must be both a delivery and acceptance during the lifetime of the grantor. *Herbert* v. *Herbert,* Breese, 354; *Wiggins* v. *Lusk,* 12 Ill. 132; *Rivard* v. *Walker,* 39 id. 413.

In this case there is no evidence of any delivery by the deceased of any of said deeds, or that the grantees, or any of them, accepted the deeds, or any of them, during the lifetime of the deceased. Delivery after the death of the grantor is not operative. *Wiggins* v. *Lusk, supra,* and authorities cited.

This court, in *Byars* v. *Spencer,* 101 Ill. 429, announced the rule that there can be no valid delivery unless the evidence shows that the grantor has parted with all authority and control over the deed.

There is not one word of evidence even tending to show that any person, at any time prior to the death of the deceased, made any inquiry of any of the grantees in said deeds as to what should be done with them. But the evidence certainly does show, beyond all question, that the last words ever uttered by the deceased were to show that he had not delivered any of said deeds to any of said grantees, and that he did not intend to deliver any of them until the next morning.

The rule announced in the following cases has a direct bearing on this case, viz.: *Kingsbury* v. *Burnside,* 58 Ill. 310; *Insurance Co.* v. *Campbell,* 95 id. 267, and authorities cited; *Weber* v. *Christen,* 121 id. 91, and authorities cited; *Price* v. *Hudson,* 125 id. 284, and authorities cited.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The important question presented upon this record is, whether the several deeds, signed, sealed and acknowledged by Philip C. C. Provart and wife, were in fact delivered, so as to make them effectual to convey the lands therein described, to appellants. Delivery of the deeds is denied, but as to the facts and circumstances of and attending the alleged delivery there is practically no controversy. The deeds were all signed and acknowledged by the grantor at the same time. On the day of his death, at his request, a scrivener was called in, whom he directed to draw the five deeds and his will. The deeds were drawn, signed and acknowledged, and laid upon a table in an adjoining room, where they were found after the grantor's death. After the making of the deeds was completed, the scrivener entered at once upon writing the will, and having written the commencement, and made memorandum of two items of lands to be devised, the said Provart became too weary to proceed, and requested the scrivener to call the next morning and finish it. The scrivener, being about to take his departure, asked Provart if he should take the deeds along and keep them till morning. The grantor replied, "No, let them stay where they are." A grandson, who was present at the time, testifies that the reply was, "No, they are all right; just leave them alone." Within an hour after the scrivener's departure the grantor died. The pastor, who was also present, testifies: "I laid them" (the deeds) "on the table, together, where they remained until he died. He said two or three times during the day: 'I want to make the deeds out to my boys; if I don't get along I want you to take the deeds and have them recorded; if I get along I will do that myself.' After he died I took the deeds, * * * and next morning gave them to two of the boys,—not the ones the deeds were made to. * * * He did not say what to do with them,— only said to bring them and have them recorded, if he did not

get along." The deeds were subsequently handed to appellants and filed for record.

It is apparent from this record that the original design and intention of the father was, at the time, the distribution of his entire estate among those having claim upon his bounty, and that the making of the deeds to his five sons, the appellants, was, in the father's contemplation, but a part of the general plan for the final disposition of his property. It is a familiar and fundamental rule of law, that in order for a deed to operate as an effectual transfer of title to land, it is indispensable that it be delivered. Delivery is the final act on the part of the grantor by which he consummates the purpose of his conveyance, and without it all other formalities which have preceded are impotent to render it effectual as an instrument of title. The law prescribes no formulary to be pursued in making delivery of the deed, and it may be done "by acts without words, or by words without acts, or by both." (*Bryan* v. *Wash*, 2 Gilm. 565.) Or, as said in *Herbert* v. *Herbert*, Beecher's Breese, 354, quoting from *Jackson* v. *Phipps*, 12 Johns. 419, it may be "either actual, by doing something and saying nothing, or else verbal, by saying something and doing nothing, or it may be by both; but by one or both of these it must be made, for otherwise, though it be never so well sealed and written, yet is the deed of no force,"—citing 1 Shepard's Touchstone, 57, 58; 2 Blackstone's Com. 307; Viner's Abr. 27, sec. 52. See, also, *Walker* v. *Walker*, 42 Ill. 311; *Skinner* v. *Baker*, 79 id. 496; *Byars* v. *Spencer*, 101 id. 429.

While it may not be essential, in all cases, that the deed should be delivered into the actual possession of the grantee, (*Gunnell* v. *Cockerill*, 79 Ill. 79,) it is indispensable, whatever means may be adopted to accomplish its delivery, that the deed pass beyond the dominion and control of the grantor, for, otherwise, it can not be correctly said to come within the power and control of the grantee. Their interests are diametrically opposed. Both can not, consistently with its objects,

have control of the deed at the same time, and until the grantor parts with all control over it, that of the grantee does not attach. (Cases *supra.*) It is absolutely essential that the acts done or words spoken, or both, shall clearly manifest an intention, on his part, that the deed shall presently become operative to convey the estate therein described, to the grantee, and that he has parted with all power of control and dominion over it, (*Bryan* v. *Wash, supra,*) for, as we have seen, if the grantor retains dominion and control over it, the deed is ineffectual for any purpose as a conveyance. In *Cook* v. *Brown,* 34 N. H. 460, the court, in passing upon this point, there said: "To make the delivery good and effectual, the power of dominion over the deed must be parted with. Until then the instrument passes nothing. It is merely ambulatory, and gives no title. * * * So long as it is in the hands of a depositary, subject to be recalled by the grantor at any time, the grantee has no right to it and can acquire none; and if the grantor dies without parting with his control over the deed, it has not been delivered during his life, and after his decease no one can have the power to deliver it." In *Prutsman* v. *Baker,* 30 Wis. 644, it was said: "To constitute delivery, good for any purpose, the grantor must divest himself of all power and dominion over the deed. * * * An essential characteristic and indispensable feature of every delivery, whether absolute or conditional, is, that there must be a parting with the possession, and of the power and control over the deed, by the grantor, for the benefit of the grantee, at the time of delivery." While the doctrine announced in these cases has not been universally adopted, (1 Devlin on Deeds, sec. 283,) it is supported by the great current of authority. See *Hawes* v. *Pike,* 105 Mass. 560; *Shurtleff* v. *Francis,* 118 id. 154; *Garnaus* v. *Knight,* 5 B. & C. 671; *Stilwell* v. *Hubbard,* 20 Wend. 44; *Brown* v. *Brown,* 66 Me. 316; *Jackson* v. *Dunlap,* 1 Johns. Cas. 114; *Baldwin* v. *Maultsby,* 5 Ired. 505;

*Younge* v. *Guilbeau,* 3 Wall. 636; *Tompkins* v. *Wheeler,* 16 Pet. 106, and *supra.*

In *Weber* v. *Christen,* 121 Ill. 91, it was said, that "if, from all the circumstances, * * * it appears the grantor * * * intended to give effect and operation to the deed, and to relinquish all power and control over it, we think it clear the law would give the deed effect accordingly," etc. In support of this view see, also, *Wiggins* v. *Lusk,* 12 Ill. 132; *Rivard* v. *Walker,* 39 id. 413; *Price* v. *Hudson,* 125 id. 284; *Kingsbury* v. *Burnside,* 58 id. 310.

Applying the foregoing principles to the case at bar, we think it manifest that there was no delivery of the deeds by the grantor with the intention that they should presently become operative. They were not delivered to the Rev. Harris for delivery to the grantees, but at most they were left where the scrivener had placed them, and Harris instructed by the grantor that in the event he (the grantor) did not get along, to see that the same were recorded; accompanied with the statement that if he did, he would attend to it himself. Undoubtedly his intention was to proceed, on the following morning, with the completion of his will, and effect thereby complete disposition of his estate. Had he been impressed with the conviction that he would probably not live to do so, it might be presumed that he would have made actual delivery of the deeds. But it can not be known that he would ever have delivered them except as part of the general disposition of his property, of which they formed a part. There can be no question that his dominion and control over the deeds, at the time of his death, was such that, had he lived, he could have revoked or destroyed them, and there was therefore no legal delivery of the deeds to appellants.

Appellants were permitted to testify in their own behalf, over the objection of appellees. No cross-error is assigned questioning the correctness of this ruling, and it is not, therefore, presented for decision. It is, however, insisted by appel-

4—150 ILL.

lants, that their testimony was competent, but that the court disregarded it in the rendition of its decree. It is unnecessary to determine the competency of the evidence, for the reason that if it be considered, it would not, in our judgment, change the result. As we have seen, there is no considerable conflict, and when all is considered we can not say that the court erred in its finding.

The decree of the circuit court will be affirmed.

*Decree affirmed.*