LUCY DAGLEY

*v.*

ANDREW G. BLACK, Exr. *et al.*

Opinion filed June 19, 1902.

1. DEEDS—*it is essential to delivery that a deed pass beyond grantor's control.* It is essential to a delivery of a deed, whatever means are used, that the instrument pass beyond the dominion and control of the grantor.

2. SAME—*when possession of third party is possession of grantor.* If the grantor hands a deed to a party acting as his agent, to be delivered to the grantee, the possession of the agent is the possession of the grantor.

3. SAME—*acceptance of deed by grantee is essential.* In order to render a deed operative it is not only necessary that there be delivery, but also that there be an acceptance thereof by the grantee.

4. SAME—*parol proof of existence and contents of a lost deed.* When parol proof of the existence and contents of a lost deed is the only evidence offered, the witness must have seen and read the deed and be able to state its contents, whether it conveyed a fee simple, a life estate or an estate for years, and also whether it was in fact executed by the grantor.

APPEAL from the Circuit Court of White county; the Hon. P. A. PEARCE, Judge, presiding.

This is an action of ejectment, brought by the appellant, Lucy Dagley, against the appellees, Andrew G. Black, executor of the last will of Silas W. Powell, deceased, and Robert J. Bailey, (the latter being merely a tenant of the executor,) for the recovery of a house and lot, consisting of six or seven acres in Norris City in

White county. Appellees pleaded not guilty. At the August term, 1901, of the circuit court of White county the cause was tried by the court without a jury, and the issues were found for the appellees. Appellant availed herself of her right to another trial under the statute, and the cause was tried a second time at the January term, 1902, of said court before the court and a jury. After the evidence was introduced on behalf of both parties, the court gave a written instruction to the jury to find a verdict of not guilty. Thereupon, judgment was rendered for the appellees at the cost of the appellant, and execution was awarded. The present appeal is prosecuted from the judgment so entered by the circuit court.

Silas W. Powell, commonly called Wright Powell, deceased, died testate on August 8, 1899, at Norris City, leaving an estate worth some $12,000.00 or $15,000.00. He was unmarried, and about sixty years old, and had been in bad health for several years before his death. The appellant, Lucy Dagley, was his niece, the daughter of his sister, and had been staying with him as his housekeeper, but was absent at the time of his death, and for some time before his death, on a visit to one of her relatives. Her maiden name was Lucy Bozeman, and she was called by her uncle, and among her friends, before her marriage, "Pet" Bozeman.

By the will the appellee Andrew G. Black was appointed executor. The appellant filed an affidavit that she held under a common source of title with the appellees, and claimed title under a deed, alleged to have been made to her by her deceased uncle, Wright Powell, a few days before his death.

The material facts in regard to the execution of the deed, if any such deed was executed, appear in the testimony of William H. Strottner. Strottner was a friend and neighbor of Powell, and was sent for by him a few days before Powell's death. Powell told him that he had some notes and deeds, which he desired to dispose of, and,

under his direction, Strottner went to a trunk, in which Powell kept his papers, and took from it some notes and two deeds. Strottner says: "One of the deeds he mentioned, when he gave them to me, was to Ora Gillam, a lady he had to keep house for him, but he says: 'I have changed my notion about giving her the deed;' then he mentioned the other deed, and said, 'This is for Pet,' as he called her; * * * 'I want her to have this property here,' the home property he then lived in; and he gave me the notes and deeds, except the deed to Ora Gillam, which was left with the other papers; I then proceeded to give the notes away as directed; he said he wanted to give them to certain ones; * * * I wrote a little note to each one, and enclosed it with the note in an envelope, and backed the envelope; I read the letters to him; Mrs. Dagley's deed was the last one; I had her note, or maybe two notes, amounting to $200.00, or thereabouts, and this deed; I wrote her a note about the business of getting it to her and what he said, and enclosed that, and, when I went to place it in the envelope, the envelope was too small to go in without folding; I do not remember the substance of the note; * * * when he gave me the deed, he told me to send it with the other papers to Mrs. Dagley, that is, Pet Bozeman; she was not married then; I wrote this little note I have been telling you about, and enclosed the notes, and was going to put in the deed. It was a small envelope, and it would not hold the deed very well without folding the deed. I said 'It will not go in this envelope, and I will leave this here, and will be back in a few days, or Pet will be up here;' and that is all I know about it; the reason I did not send the deed at that time was that the envelope I used was too small to put the deed in with the other papers. There was no other reason except that; Mr. Powell said nothing about sending it then; when I said the envelope was too small, he answered 'All right,' or something; I think that was the only reply he made. I never had anything to do

with the deed except what I have stated; I never saw it afterwards. I heard him say lots of times he intended to give Pet the property he then lived in in Norris City. After this Mr. Powell lived but a few days; I think this was in the first days of August; I saw him but once after that; I left the deed there in his house; I laid it down on the dresser where I was writing, I think, and went off, and that is the last I ever saw of it, and all that I know about it; I did not deliver it; possibly I said on the former trial of the case that I gave it back to Mr. Powell to put into the trunk, or left it on the dresser; I either gave it back to him to put into the trunk, or laid it down upon the dresser, I am not certain which. I do not remember whether he took it into his hands again or not. My recollection now is, that I laid it down there on the dresser, where I had been writing. I was back there once on Wednesday before he died, but nothing was said then about any business; this transaction took place four, five or six days, I cannot say which, before he died."

HOLDERBY & BAINUM, and B. S. ORGAN, for appellant.

C. S. CONGER, and J. I. McCLINTOCK, for appellees.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

*First*—Appellant produced upon the trial no deed executed to her by her uncle, Silas W. Powell. If such a deed was executed, the testimony does not show clearly what became of it. Certainly, there never was any formal delivery of it to the appellant. The first question, which arises in the case, is whether there was a legal delivery of the deed to the appellant. In order that a deed may be operative as an effectual transfer of title to land, there must be a delivery of it. "Delivery is the final act on the part of the grantor, by which he

consummates the purpose of his conveyance, and without it all other formalities, which have preceded, are impotent to render it effectual as an instrument of title." (*Provart* v. *Harris*, 150 Ill. 40). In other words, to constitute a good delivery of a deed, the grantor must divest himself of all power and dominion over it. In *Provart* v. *Harris*, *supra*, we said (p. 47): "While it may not be essential, in all cases, that the deed should be delivered into the actual possession of the grantee, (*Gunnell* v. *Cockerill*, 79 Ill. 79,) it is indispensable, whatever means may be adopted to accomplish its delivery, that the deed pass beyond the dominion and control of the grantor, for, otherwise, it cannot be correctly said to come within the power and control of the grantee. Their interests are diametrically opposed. Both cannot, consistently with its objects, have control of the deed at the same time, and until the grantor parts with all control over it, that of the grantee does not attach."

Where the grantor in a deed hands it to a party acting as his agent, to be delivered to the grantee, the possession of the agent is, in law, the possession of the grantor.

In *Barrows* v. *Barrows*, 138 Ill. 649, where a person, in anticipation of his marriage, executed and acknowledged a deed for a house and lot to his intended wife, and handed the same to his attorney, with instructions to deliver it to the grantee as soon as the marriage was solemnized, and, two days after the marriage, the attorney returned the deed to the grantor, we said (p. 654): "The act of the grantor in handing the deed to his attorney, or in leaving it with him, with instructions to deliver it to the complainant as soon as the marriage was solemnized, was not a parting with the instrument with the intention of relinquishing all dominion over it, but merely putting it into the hands of an agent, whose possession, so long as it continued, was the possession of the principal. Until the agent, thus charged with the

duty of making delivery, actually delivered the deed, the instrument was no more operative than it would have been, if it had remained in the personal custody of the grantor."

If the rules above announced be applied to the facts of the present case, it is quite clear that there was no delivery of the deed, although it may have been the intention of Silas W. Powell, deceased, to give the property in question to his niece, the appellant. If he had executed a deed to her, and that deed was present when the interview took place between himself and Strottner, he never parted with his control over it, or, if he did so for a few minutes, his control over it was resumed. He handed the deed, together with some notes, to Strottner to be enclosed by mail to his niece who was absent. Strottner wrote a note to the appellant, and enclosed the notes given to her, but said that the envelope was too small to hold the deed. He thereupon left the deed upon the table, or dresser, where he had been writing, or handed it back to Powell, and then left and never saw it afterwards. It is clear that the deed never left the possession or control of Powell. In this matter, Strottner was merely the agent of Powell to make a delivery of the deed. Whatever possession and control Strottner had of the deed was the possession and control of Powell, his principal. It cannot be said that he was the agent of appellant, the grantee, to receive and accept the deed, as well as the agent of Powell, the grantor, to deliver the deed. As has been stated in the quotation above made, the interests of Powell and of appellant, being those of grantor and grantee, were diametrically opposed, and Strottner could no more be the agent of both parties than could an agent of the seller of property be the agent of the purchaser in the same transaction. (Story on Agency,—9th ed.—sec. 211).

*Second*—In order to render a deed operative to pass title it is not only necessary that there should be a de-

livery of the deed by the grantor, but also that there should be an acceptance thereof by the grantee. There is no evidence in this record of any acceptance of this deed, if there was a deed, by the appellant.

In *Moore* v. *Flynn*, 135 Ill. 74, we said (p. 79): "The acceptance of the conveyance by the grantee is as essential as the delivery by the grantor, and where the acceptance is not proven, and the facts do not justify the presumption of law, that the grantee has accepted, the title does not pass. (5 Am. & Eng. Ency. of Law, p. 446, and cases cited; *Wiggins* v. *Lusk*, 12 Ill. 132; *Kingsbury* v. *Burnside*, 58 id. 310; *Dale* v. *Lincoln*, 62 id. 22). In respect to a grantee, who is not under legal disability, the rule is, that, when such grantee is aware of the conveyance, and does not dissent, and the conveyance is positively beneficial to him or her, acceptance will be presumed, but that no such presumption will arise, so long as the grantee is ignorant of the conveyance."

In the case at bar, Mrs. Dagley, the appellant, was under no legal disability. She was not aware, so far as the record shows, of the existence of any deed from her uncle to herself until after his death. As she was ignorant of the existence of any such conveyance, if it did exist, no presumption of acceptance on her part arises, although the deed was beneficial to her. She states in her testimony that the letter, in which her uncle enclosed the notes to her, was lost or destroyed, and she was unable to say what the contents of the letter were. She says that in it were "just a few words, and two notes." It does not appear that anything was said in the letter about the deed. This deed was never seen after the death of Powell, and was never in the possession of appellant, or of any other person, so far as known. One witness testifies that, under the instructions of Powell, he one day threw a deed into the fire, and the same was burned up. The witness, however, was unable to say what deed this was. The evidence does not show whether it was the

deed executed to Ora Gillam, or the deed, alleged to have been executed to appellant.

*Third*—There is really no competent evidence in the record of the execution of a deed to the appellant. The witness, Strottner, states that Mr. Powell handed him a deed to be sent by mail to his niece, but Strottner does not state that he opened the paper handed to him and called a deed by Powell, or that he read the deed, or knew anything about its contents, except that Powell called it a deed. There is some evidence, tending to show that the deed was drawn and acknowledged before a notary or justice by the name of Carroll, but Carroll had been dead some two years before the trial of this case. The only evidence, that Carroll did draw the deed, and take the acknowledgment of it, is the statement of one witness, that he saw Carroll go to Powell's house at one time, and saw him come away from the house, and that Carroll stated that he had taken the acknowledgment of a deed. But there is really no evidence in the record of the loss of the deed, or of the inability of the appellant to produce it, nor is there any evidence by any witness, who ever saw the deed, as to what its contents were. When parol proof of the existence and contents of a lost deed is offered as the only evidence thereof, the witness must have seen and read it, and be able to speak pointedly and clearly as to its tenor and contents, and to state whether it conveys a fee simple, a life estate, or a term for years, and whether it in fact was executed by the supposed grantor. (*Rankin* v. *Crow*, 19 Ill. 626). No such testimony as is thus required was introduced in this case.

We are of the opinion that the judgment of the circuit court is correct. Accordingly, that judgment is affirmed.

*Judgment affirmed.*